

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00365-CV
_____

ESPERANZA MARTINEZ, Appellant

V.

ACA TEAM, LLC; UNIVERSAL DISPLAY & FIXTURES COMPANY; LUIS
BARBERO; JOE BATTAGLIA; FRANCISCO DE JESUS; JESSICA GUERRA;
SHAWN KERNS; AND ADOLPHUS NORTON, Appellees

---

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-362271-25

---

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

Appellant Esperanza Martinez challenges the trial court's dismissal of her claims. *See* Tex. R. Civ. P. 91a.1. According to Martinez, Appellee Adolphus Norton—Appellee Universal Display & Fixtures Company's employee—made a sexually suggestive comment to her in 2021, and when she reported the incident two years later, Universal failed to address it, thereby subjecting her to a hostile work environment and leading her to question whether Norton's other conduct carried implied sexual undertones as well. So, after Martinez's staffing agency—Appellee ACA Team, LLC—told her that Universal had ended her assignment, she filed suit based on Norton's neutral-but-implicitly-loaded 2023 conduct. *See generally* Tex. Lab. Code Ann. §§ 21.001–.556. The trial court found that her claims against ACA, Universal, and Universal's employees—Appellees Luis Barbero, Joe Battaglia, Francisco De Jesus, Jessica Guerra, Shawn Kerns, and Adolphus Norton (the Universal Employees)—lacked a legal or factual basis, and it dismissed them under Texas Rule of Civil Procedure 91a. *See* Tex. R. Civ. P. 91a.1.

Martinez argues that these dismissals were erroneous. In seven appellate issues, she asserts that her pleadings satisfied Rule 91a's minimal standard for survival. But even though Rule 91a's standard is minimal, Martinez's claims did not meet it; she could not hold ACA liable for Universal's employees' actions, and regardless, those actions—Norton's neutral 2023 conduct—did not state a cognizable claim for sexual harassment. We will affirm.

# I. Background

In Martinez's live petition—which we take as true in the Rule 91a context, *see*

*City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016)—she pleaded that

- Universal employed each of the Universal Employees sued.

- ACA and Universal were "an integrated enterprise" that "jointly exerted authority over [Martinez's] employment" at all relevant times,[1] with Universal controlling her day-to-day "schedule . . . and when the assignment ended."[2]

- In 2021, a nonparty Universal employee told her that Norton had a sexual interest in her, and Norton confirmed as much and stated that "if she accepted his proposition of being with him sexually, he would see her work in a more positive way and she could gain monetary benefits." Martinez refused.

- Norton "was not her immediate boss" and "she did not have to interact with him often," so Martinez did not report his behavior.[3]

- After she rejected Norton, he "stopped talking to [her] and stopped inviting her to work with [him]."

---

[1]According to Martinez, her initial "employment with Universal" had been through a nonparty staffing agency, and in 2018, she was "told [she] had to switch from [that staffing agency] to ACA if [she] wanted to continue working for Universal," so she transferred to ACA.

[2]Martinez elaborated on this characterization; she pleaded that "ACA paid [her] salary, withheld taxes, and set the terms and conditions of [her] employment assignment," while Universal "set the terms and conditions of [her] employment, including controlling [her] schedule, rate of pay, . . . and when the assignment ended." She explained that she had asked ACA about a salary increase at one point, and she was told "that 'since Universal was considered [her] employer, she would have to discuss any issues directly with Universal.'"

[3]Martinez pleaded that, later, the nonparty "asked if he had a chance with [her]," but as with Norton, she rejected him and did not report the behavior. On appeal, she acknowledges that "she alleges no further conduct on the part of [the nonparty], which is why [he] was not named as a [d]efendant."

- Approximately two years later, in late September or early October 2023, Martinez learned that Norton was becoming her direct manager. This prompted her to report the 2021 incident to Guerra, who worked in Universal's Human Resources department.

- Guerra "told [Martinez] she [had] talked to [Norton and the nonparty], both of wh[om] denied making the inappropriate sexual advances."

- Prior to Norton becoming Martinez's supervisor, Martinez had been permitted to work on an alternative schedule. But after Norton became her supervisor,[4] he "attempted to change [her] schedule" to align with Universal's standard policy. Martinez raised the matter with Norton and Guerra, she explained the "personal reasons" necessitating her alternative schedule, and she noted that her previous supervisor had approved it.

- Norton and Guerra ultimately "agreed to allow her to keep her schedule until further notice," but Norton told her that "she 'should be grateful' and that she 'owed him' for making the exception for her schedule."

- "Norton began standing behind [Martinez] and observing her work" such that Martinez "fe[lt] unsafe."

- At the end of October 2023, Martinez sent a letter to four of Universal's leaders—Barbero, Battaglia, De Jesus, and Kerns—"to inform them of the sexual harassment she [had] faced in 2021 and the ongoing sexual harassment [she] was being subjected to."[5]

- Just a few days after her letter, Martinez "was informed by her contact at ACA that she was terminated because Universal said she was 'no longer needed.'"

---

[4]Martinez's pleadings do not identify the date on which Norton became her direct supervisor. However, based on the dates of surrounding events, it appears he assumed the position sometime in early October 2023.

[5]Universal claimed that, on November 1—the day after Martinez sent her letter to Universal's leaders—Martinez told a coworker that she was leaving Universal, and on November 2 and 3, Martinez had failed to "show up to work or call in with a reason for being absent," so her "termination took effect on November 3, 2023." Martinez meanwhile, alleged that November 2 and 3 were "inventory dates" and "only a few chosen people worked those days."

ACA "told her [it] would send her the name of who she could contact for another assignment but [it] never sent it."[6]

Based on these facts, Martinez asserted claims under the Texas Commission on Human Rights Act (TCHRA) against ACA, Universal, and the Universal Employees. Her overlapping claims alleged (1) sexual harassment that created a hostile work environment and amounted to a quid-pro-quo; (2) sex-based discrimination and discharge; (3) retaliation; and (4) the Universal Employees' failure to take corrective action. *See* Tex. Lab. Code Ann. §§ 21.051, .055, .142. She pleaded that

- both ACA and Universal had violated the TCHRA because

  o they were vicariously liable for Norton's subjection of her to a sexually hostile work environment and they failed to take "reasonable care to prevent" it;

  o they conditioned her continued employment on submission to Norton's sexual advances;

  o they treated her differently than similarly situated male employees;

  o they discharged her based on her sex;

  o they retaliated against her by discharging her; and

- the individual Universal Employees had violated the TCHRA by "fail[ing] and refus[ing] to take [immediate, corrective] action to prevent [Norton] from sexually harassing [her]."[7]

---

[6]Later, Martinez claimed that she had followed up with ACA and again requested a new assignment, but ACA "told her they did not have anything available." At the time, Universal was ACA's "primary client."

[7]In her responses to the Rule 91a motions, Martinez asserted that her pleadings regarding ACA's and Universal's negligent failure to address Norton's conduct stated claims against the entities for failing to take corrective action under Section 21.142 of

Universal and the Universal Employees (together, the Universal Defendants) moved to dismiss Martinez's claims under Texas Rule of Civil Procedure 91a. *See* Tex. R. Civ. P. 91a.1. ACA soon followed suit.

In responding to these motions, Martinez amended her petition[8] and sought to avoid time-related impediments to her claims by clarifying that such claims were "based on acts that occurred . . . in late September/early October 2023" when Norton became her supervisor; she characterized his 2021 comment as mere context or, alternatively, one instance of a continuing violation. But the Universal Defendants argued that Martinez's claims lacked a legal or factual basis because, among other things, none of Norton's 2023 conduct constituted sexual harassment and Martinez's allegations of

the TCHRA. *See* Tex. Lab. Code Ann. § 21.142 (providing that "[a]n employer commits an unlawful employment practice if sexual harassment of an employee occurs and the employer . . . know[s] or should have known that the conduct constituting sexual harassment was occurring; and . . . fail[s] to take immediate and appropriate corrective action"). She repeats this argument on appeal. But when she pleaded her claims against the Universal Employees for failure to take corrective action, she expressly situated those claims under Section 21.142. In contrast, Martinez expressly situated her negligence claims against ACA and Universal under another statute: Section 21.051 of the TCHRA, which prohibits sex-based discrimination. *See id.* § 21.051(1) (providing that "[a]n employer commits an unlawful employment practice if because of . . . sex . . . the employer . . . discharges an individual[] or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment").

[8]When Martinez amended her petition in response to the Universal Defendants' original Rule 91a motion, the Universal Defendants filed an amended Rule 91a motion. ACA's Rule 91a motion, meanwhile, came after Martinez had filed her amended petition.

discrimination did not show that she was treated differently than any similarly situated male employees. ACA's Rule 91a motion further noted that, regardless of the propriety of Norton's conduct, he was a Universal employee—not an ACA employee.

The trial court granted both motions without specifying a basis for its rulings.

## II. Discussion

In seven issues, which we construe as two, Martinez challenges the trial court's dismissal of her claims against (1) ACA and (2) the Universal Defendants.

## A. Standard of Review

Texas Rule of Civil Procedure 91a authorizes a trial court to dismiss a claim that has "no basis in law or fact." Tex. R. Civ. P. 91a.1; *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020). A claim "has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought," and it "has no basis in fact if no reasonable person could believe the facts pleaded." Tex. R. Civ. P. 91a.1. "[T]he availability of a remedy under the facts alleged is a question of law and the [R]ule's factual-plausibility standard is akin to a legal-sufficiency review." *Sanchez*, 494 S.W.3d at 724.

If a defendant moves for dismissal of a plaintiff's claim under Rule 91a—as ACA and the Universal Defendants did here—the trial court "may not consider evidence" and must decide the motion "based solely on the pleading of the cause of action," construing the pleadings liberally in the plaintiff's favor. Tex. R. Civ. P. 91a.6; *see Bethel*,

7

595 S.W.3d at 655 (explaining that Rule 91a "contemplates that a court may consider at least the substance of the Rule 91a motion and arguments at the hearing, in addition to the plaintiff's pleadings, in deciding the motion").

We do likewise, reviewing the trial court's Rule 91a dismissals de novo. *Bethel*, 595 S.W.3d at 654; *Sanchez*, 494 S.W.3d at 724. Our review "incorporate[s] the fair-notice pleading standard," meaning that, to avoid dismissal, Martinez need only have "sufficiently alleged a legal and factual basis for each cause of action [to] giv[e] the defendant[s] fair notice of the nature of the controversy, its basic issues, and the type of evidence that could be relevant." *Johnson v. Bearfoot Cos.*, No. 02-23-00366-CV, 2024 WL 2202033, at *2 (Tex. App.—Fort Worth May 16, 2024, no pet.) (mem. op.); *see In re First Reserve Mgmt., L.P.*, 671 S.W.3d 653, 661–62 (Tex. 2023) (orig. proceeding) (explaining that the "notice-pleading rules . . . require pleadings to not only give notice of the claim and the relief sought but also of the essential factual allegations" (internal quotation marks omitted)).

## B. Claims Against ACA

Martinez pleaded claims against ACA for (1) sexual harassment, (2) sex-based discrimination, (3) retaliation.

But her first two claims against ACA suffer from a common flaw: they are premised on the actions of Universal's employees. The TCHRA imposes liability for harassment and discrimination on "the employer" that "commit[ted the] unlawful

8

employment practice."[9]  Tex. Lab. Code Ann. § 21.051.  In other words, the bad actor who engaged in the harassing or discriminatory conduct must be an agent of the "employer" that is being held liable.  *See id.*; *see also id.* § 21.002(8) (defining "[e]mployer").  And while Martinez's live petition went out of its way to allege that she had been jointly employed by both ACA and Universal, the petition did not allege that the same joint employment relationship extended to Norton or any of the other Universal Employees.  To the contrary, for each individual sued, Martinez's pleadings identified the person's title at Universal—from the "Senior Director of Operations of Universal" to the "President and Chief Executive Officer of Universal."[10]  Yet, the actions of these individuals were the sole basis for Martinez's sexual harassment and sex-based discrimination claims.[11]  Such allegations, "taken as true, . . . d[id] not entitle [her] to the relief sought" against ACA.  Tex. R. Civ. P. 91a.1.

---

[9]The TCHRA statute imposing liability on an "employer" that discriminates is separate from that imposing liability on an "employment agency" that discriminates, and Martinez expressly pleaded all of her sexual harassment and discrimination claims against ACA under the former statute.  *Compare id.* § 21.051, *with id.* § 21.052.

[10]In response to ACA's Rule 91a motion, Martinez argued that, although her pleadings had identified the alleged bad actors as Universal's employees, she "d[id]n't know that for sure" so she had hedged her bets by suing ACA as well because, "if the[ bad actors] are . . . on payroll of one or the other or there's this hybrid task where some of these people fall under ACA's employee–employer relationship, then that would give rise to claims against ACA."  But Martinez's live petition did not allege that the bad actors might be ACA's employees; her petition alleged that they were Universal employees.  She admits as much on appeal.

[11]Citing *Arredondo v. Elwood Staffing Services, Inc.*, Martinez argues that ACA could be held vicariously liable for Universal's discrimination because ACA should have

Martinez's third claim against ACA—her retaliation claim—was slightly different; in it, Martinez alleged that ACA itself had acted unlawfully by terminating her job assignment. But this claim, too, was flawed.

According to Martinez, when she reported Norton's alleged harassment to the Universal Defendants, ACA retaliated against her by failing to reassign her. But nothing in Martinez's live petition asserted, implied, or supported an inference that ACA knew of her report. She did not claim that she had reported Norton's conduct to anyone at ACA, that Universal had shared her report with ACA, or that ACA had any other way of knowing of her report. And on appeal, she effectively concedes ACA's lack of knowledge and argues that, because ACA directed her to "take any concerns about the terms and conditions of [her] employment directly to Universal," it was to blame for its

_____

known of the discrimination and failed to take corrective action. *See* 81 F.4th 419, 431–37 (5th Cir. 2023) (recognizing that "staffing agencies can be held liable for the conduct of their clients" if they participated in the discrimination or "knew or should have known of their client's discriminatory behavior yet failed to take corrective actions within their control" but affirming summary judgment dismissal of claims against staffing agency). She asserts that ACA "opened itself up to claims of this nature by directing [her] to discuss her employment concerns with Universal directly."

But nothing in Martinez's petition indicated that ACA discouraged Martinez from notifying it of discriminatory conduct or that ACA would have known of the conduct had it exercised reasonable care. The closest Martinez came to such a pleading was her allegation that, when she "requested a raise from ACA, she was told . . . . to discuss [such] issues directly with Universal." But Martinez did not give any indication that this instruction was unreasonable or that ACA gave the same instruction for reports of discrimination. In short, Martinez's pleadings, taken as true, would not support a finding that, as Martinez now claims, ACA "put its head in the proverbial sand" regarding the Universal Defendants' discrimination.

10

own ignorance. Regardless of who was to blame, though, logic dictates that ACA could not have retaliated for a report that it did not know had been made. Thus, Martinez's pleadings, "taken as true, . . . d[id] not entitle [her] to the relief sought" against ACA for retaliation. *See* Tex. R. Civ. P. 91a.1.

We overrule Martinez's challenges to the Rule 91a dismissal of her claims against ACA.

## C.     Claims Against the Universal Defendants

Next, Martinez challenges the trial court's dismissal of her claims against the Universal Defendants—her claims for (1) sexual harassment, (2) sex-based discrimination, (3) retaliation, and (4) failure to take corrective action.[12]

### 1.     Norton's 2023 conduct did not constitute sexual harassment.

Three of Martinez's four claims—her claims for sexual harassment, retaliation,[13] and failure to take corrective action—required her to plead facts that could support a

---

[12]Martinez argues that, under Section 21.142 of the TCHRA, she could hold individual employees liable for their failures to take corrective action. *See* Tex. Lab. Code Ann. § 21.142; *cf. id.* § 21.141(1) (defining "[e]mployer" for purposes of Section 21.142 to include "a person who . . . acts directly in the interests of an employer in relation to an employee"); *Butler v. Collins*, 714 S.W.3d 562, 567 & n.6 (Tex. 2025) (discussing another provision of the TCHRA that provides another definition of "employer" and noting that "state and federal courts have not viewed the inclusion of the word 'agent' in the definition . . . to impose liability on an individual who does not otherwise qualify as an employer"). We need not resolve this statutory interpretation issue to dispose of the appeal; either way, Martinez did not state a legal or factual basis for her Section 21.142 claims. *See* Tex. R. App. P. 47.1.

[13]The Universal Defendants began their Rule 91a motion with an across-the-board assertion that Norton's 2023 actions were "non-harassing" and that none of

finding of sexual harassment or, at a minimum, support her reasonable belief that sexual harassment had occurred. *See* Tex. Lab. Code Ann. § 21.142 (requiring corrective action in certain circumstances "if sexual harassment of an employee occurs"); *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 880–81 (Tex. 2024) (listing elements of sexually hostile work environment claim, including that the "employee was subjected to unwelcome sexual harassment" and "the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile work environment"); *Miller v. Great Lakes Mgmt. Serv., Inc.*, No. 02-16-00087-CV, 2017 WL 1018592, at *5 (Tex. App.—Fort Worth Mar. 16, 2017, no pet.) (mem. op.) (listing elements of quid-pro-quo sexual harassment as requiring the plaintiff to have "suffered a tangible employment action . . . result[ing] from the acceptance or rejection of a supervisor's sexual advances"); *Hous. Methodist San*

---

Norton's alleged conduct "m[et] the TCHRA definition of harassment." But while the Universal Defendants elaborated on this argument in their challenges to some of Martinez's claims, they focused on other arguments in challenging Martinez's retaliation claim. Nonetheless, the Universal Defendants' general complaint was well founded, and the trial court did not specify a basis for its judgment, so we can affirm on that basis. *See Gunn v. Sandalwood Mgmt. Inc.*, No. 02-23-00254-CV, 2024 WL 2202019, at *2 (Tex. App.—Fort Worth May 16, 2024, pet. denied) (mem. op.) (recognizing that when "an order granting a Rule 91a motion to dismiss does not specify the grounds for dismissal, an appellant seeking reversal of the order must negate the validity of each ground on which the trial court could have granted the motion; otherwise the order must be affirmed"); *cf. G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297–98 (Tex. 2011) (recognizing in the summary judgment context that, even if a trial court errs in granting summary judgment on a ground or claim not presented in the written motion, "the error is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case," such as when "the defendant has conclusively disproved an ultimate fact or element which is common to all causes of action alleged").

*Jacinto Hosp. v. Ford*, 483 S.W.3d 588, 592 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (recognizing that, to establish retaliation based on a report of sexual harassment, the plaintiff must demonstrate her "good-faith, *reasonable* belief" that the reported activity constituted sexual harassment).

Generally, to constitute actionable sexual harassment, the conduct must involve "unwelcome sexual advance[s]," requests for "sexual favor[s]," or similar acts of "a sexual nature." *See* Tex. Lab. Code Ann. § 21.141(2) (defining "[s]exual harassment" for purposes of inaction claim as "an unwelcome sexual advance, a request for a sexual favor, or any other verbal or physical conduct of a sexual nature" that meets certain conditions); *Fossil Grp.*, 691 S.W.3d at 880–81 (recognizing that, for a hostile work environment claim, "the harassment [must be] so severe or pervasive as to alter the conditions of employment and create a hostile work environment"); *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 806 (Tex. 2018) (summarizing quid-pro-quo harassment as "the harasser demand[ing] sexual favors as a condition for granting employment or its benefits"); *City of Pasadena v. Poulos*, No. 01-22-00676-CV, 2023 WL 7134974, at *12 (Tex. App.—Houston [1st Dist.] Oct. 31, 2023, no pet.) (mem. op., not designated for publication) (stating that, for a hostile work environment claim, "the employee must show that the workplace was 'permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to create a hostile or abusive working environment'"); *Miller*, 2017 WL 1018592, at *5 (noting that, for a

quid-pro-quo harassment claim, the plaintiff must show "that the tangible employment action resulted from the acceptance or rejection of a supervisor's sexual advances").

Martinez's harassment-related claims were, by her own account, "predicated on conduct that occurred after Norton became [her] supervisor" in 2023.[14] She identified three alleged acts of sexual harassment during that time frame: Norton's reconsidering her alternative work schedule, his telling her that she "owed him" for making an exception for her work schedule, and his standing behind her while she worked. But all of these actions were facially neutral; even liberally construed, they could not be reasonably believed to constitute "sexual advance[s]" or "request[s] for . . . sexual favor[s]"—much less "severe or pervasive" ones. *See* Tex. Lab. Code Ann. § 21.141(2); *Fossil Grp.*, 691 S.W.3d at 880–81.

Martinez insists, though, that Norton's otherwise neutral conduct could have been understood to carry sexual undertones given the "context" of his 2021 comment. And, admittedly, Norton's 2021 comment may have heightened Martinez's instincts and led her to question his seemingly neutral actions. But more than heightened instincts is required to state a cognizable claim based on sexual harassment. *See Ford*,

---

[14]For example, in her appellate brief, Martinez argues that

[the] Universal Defendants incorrectly assumed—even after Martinez made it more clear in her Amended Petition—that Martinez's sexual harassment claims were based on the 2021 conduct of Norton and [the nonparty]; **this is false**. Martinez's sexual harassment claims are based on actions and inactions that occurred in September and October 2023.

483 S.W.3d at 593 ("Under the TCHRA, a sexual-harassment claim requires the employee to prove more than that the employee found the complained-of conduct offensive."). And more is required than the plaintiff's subjective questioning or interpretation of conduct as implicitly sexual. *Id.* at 592–93 (stating that "[a] subjective belief of sexual harassment, alone, is insufficient"). Simply put, an employee's isolated inappropriate comment cannot—after two years with no further inappropriate comments or incidents—be used to convert his neutral workplace behavior into a new, legally cognizable claim for sexual harassment. *Cf. id.* at 596 (reversing retaliation verdict because "there [wa]s no evidence to support a reasonable belief that two attempted kisses, occurring three and a half years [before the report] without further incident, was sexual harassment actionable under the law"). Martinez's pleadings regarding Norton's 2023 conduct, "taken as true, together with inferences reasonably drawn from them," did not support a finding or reasonable belief that sexual harassment had occurred. *See* Tex. R. Civ. P. 91a.1.

We overrule her challenges to the trial court's dismissal of her claims against the Universal Defendants for sexual harassment, retaliation, and failure to take corrective action.[15]

---

[15]Martinez's failure to allege facts that could constitute sexual harassment undermines her parallel claims against ACA as well. However, ACA did not raise this argument in its Rule 91a motion.

15

## 2.     Martinez did not plead facts showing discriminatory treatment.

Turning to Martinez's final claim—her claim against the Universal Defendants for sex-based discrimination—it, too, lacked a legal or factual basis.

To state a claim for sex-based discrimination, a plaintiff must allege facts showing that she, among other things, suffered an adverse employment action and was either replaced by a person outside her protected class or otherwise treated less favorably than those outside her protected class. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 632, 637 (Tex. 2012) (explaining that a plaintiff must state a claim under the TCHRA to invoke the corresponding waiver of immunity, and to do so, she must "plead the elements of her statutory cause of action—[i.e.,] the basic facts that make up the prima facie case—so that the court can determine whether she has sufficiently alleged a TCHRA violation"); *Minor v. Diverse Facility Sols., Inc.*, No. 04-20-00526-CV, 2021 WL 5218000, at *3 (Tex. App.—San Antonio Nov. 10, 2021, no pet.) (mem. op.) (reciting elements in review of Rule 91a dismissal of race discrimination claim).  Here, Martinez pleaded that she had been "treated differently than similarly situated male employees" and terminated "because of her sex."  But she did not plead anything to support the attribution of her termination to her status as a female.  *See Johnson*, 2024 WL 2202033, at *5 (affirming Rule 91a dismissal when plaintiffs "generally—and repeatedly—alleged that [the defendant] owed them a duty of care[ but] they failed to state any specific facts supporting the duty's existence or to identify a specific statute or common-law principle giving rise to the alleged duty").  To the contrary, the remainder

of Martinez's live petition identified the alleged catalyst for her termination as something else: her filing a complaint.

In the factual-background section of Martinez's live petition, she asserted that "[t]he reason for [her] termination was pretextual because she had performed her job for nearly ten years without issues . . . and was terminated just three days after she sent a letter to management about the ongoing sexual harassment." Then, later in the background section, she reiterated that Universal had "interfered with [her] employment opportunities based on unlawful criteria when it ended her assignment following her complaint of sexual harassment." Martinez neither alleged nor implied that a similarly situated male would not have been fired for reporting sexual harassment. *Cf. First Reserve Mgmt.*, 671 S.W.3d at 661–62 (explaining that, to "satisfy our notice-pleading rules, . . . [t]he plaintiff must plead the essential factual allegations supporting those claims[] which must be sufficient to support a judgment if ultimately proven" (internal quotation marks omitted)).

When the Universal Defendants raised this issue in their Rule 91a motion, Martinez responded by attempting to expand her claim. She argued that her discrimination claim was based not only on her discharge but also on her having been "treated less favorably than the male employees involved in the sexual harassment" because Guerra had believed their version of events over hers. Martinez repeats this same argument on appeal.

But Martinez's live petition did not give any hint that Guerra's credibility assessment was a basis for her discrimination claim. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25 (Tex. 2017) (rejecting argument that allegation of "knowingly" participating in another's breach provided fair notice of aiding and abetting claim and explaining that such allegation did not provide "sufficient information to enable that party to prepare a defense or a response"). Even after Martinez amended her petition in response to the Universal Defendants' Rule 91a motion, the petition linked Guerra's actions to a different claim: the claim for failure to take corrective action. *See id.* at 225 (explaining that factual allegation that defendant "knowingly" participated in breach failed to give notice of aiding and abetting claim in part because several other claims required proof of knowing participation as well).

Martinez pleaded that "Guerra [had] told [her] she [had] talked to Mr. Norton and [the nonparty], both of wh[om had] denied making the inappropriate sexual advances[, and n]o steps were taken to protect [her] from Mr. Norton's sexual harassment and there was no follow up by Ms. Guerra." Neither this description of events nor anything else in Martinez's petition gave the Universal Defendants sufficient information for them to anticipate a claim of sex-based discrimination based on Guerra's credibility assessment.

Thus, Martinez's pleadings, taken as true, did not identify a legal or factual basis for her to recover against the Universal Defendants for sex-based disparate treatment

or discharge.  *See* Tex. R. Civ. P. 91a.1.  We overrule her challenge to the trial court's dismissal of this claim.

### III.  Conclusion

Because Martinez's pleaded claims lacked a legal or factual basis, the trial court did not err by dismissing them under Rule 91a.  *See id.*  We affirm the dismissal orders.  *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  January 15, 2026

19